# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 Involuntary |
| DIAMONDHEAD CASINO CORPORATION, | Case No. 15-11647 (LSS) |
| Alleged Debtor. | |

**DECLARATION OF DDM HOLDINGS, LLC IN SUPPORT OF JOINDER
IN INVOLUNTARY CHAPTER 7 BANKRUPTCY PETITION**

DDM Holdings, LLC ("**DDM**"), as successor in interest to College Health & Investment, L.P. ("**CHI**"), by and through the undersigned authorized representative, hereby makes this declaration under penalty of perjury and in support of the *Joinder in Involuntary Chapter 7 Bankruptcy Petition* filed against Diamondhead Casino Corporation (the "**Alleged Debtor**" or "**Company**"):

1.      DDM is a Florida limited liability company.

2.      On March 25, 2010, CHI invested $150,000.00 with the Alleged Debtor in exchange for a twelve percent (12%) promissory note with a maturity date of March 25, 2012 (the "**CHI Note**"). CHI was erroneously listed as "College Health & Investments, Ltd."

3.      On September 17, 2015, CHI assigned the CHI Note, as well as its cause of action against the Company, to DDM. Documents evidencing the transfer of the CHI Note are attached hereto as Exhibit "1". The foregoing assignment was not made for the purpose of commencing a case for liquidation under chapter 7 of the Bankruptcy Code, but for the purpose of transferring the legal interest in this claim to the long-standing beneficial interest holders of the Assignor, including the right to pursue and receive payment, and as part of Assignor's divestment of various holdings. The terms of the transfer and consideration are set forth on Exhibit "1" and incorporated

herein by reference.  As a result of the transfer, the Alleged Debtor is indebted to DDM in the principal amount of $150,000.00 (the "**Debt**").

4.      DDM also has claims for costs, penalties and interest.

5.      The Debt owed by the Alleged Debtor to DDM is undisputed, fully due and payable, and remains unpaid.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  September 17, 2015

By:  Jason Giller
As authorized representative of
DDM Holdings, LLC

# EXHIBIT 1

## ASSIGNMENT

College Health and Investment, L.P. ("Assignor") hereby assigns its rights, title, and interest in any and all claims, causes of action, rights to payment, relating to and, to the full extent allowed under Delaware law, its promissory note from Diamondhead Casino Corporation ("Diamondhead") dated March 25, 2010.  This Assignment is to DDM Holdings, LLC, a Florida limited liability company ("Assignee").

On or about March 25, 2010, Assignor advanced $150,000 to Diamondhead and received, *inter alia*, the attached promissory note, (the note erroneously refers to Assignor as "College Health and Investments, Ltd.") ("The Note").

On or about January 15, 2015, Assignor commenced a lawsuit ("Lawsuit") against Diamondhead in the Superior Court for the State of Delaware ("Court") to collect payment.  And, on or about July 2, 2015, the Court held that Diamondhead has materially breached the terms of the promissory note and payment in cash is due, including the principal and interest since June 30, 2012.  A copy of the Court's Memorandum Opinion and Order is attached.

All rights are hereby assigned, and as consideration for this Assignment, Assignee will pay to Assignor the sum of $25,000 after it collects payment on the assigned claim, as well as $10, in hand paid and for good and other valuable consideration.

FURTHER ACTS.  Assignor agrees that Assignor will, at any time, and from time to time, after the date of the execution of this Assignment, upon the request of Assignee, do, execute, acknowledge and deliver, or will cause to be done, executed acknowledged and delivered, all further acts, assignments, transfers, assistance, conveyances, documents and assurances that may be required regarding the transactions contemplated here.

SUCCESSORS.  This Assignment shall be binding on and inure to the respective heirs, personal representatives, successors and assigns of Assignor and Assignee.

If, notwithstanding Diamondhead's defaults under the Note and notwithstanding the attached Court Order, the Note, or any part thereof, is deemed not to be assignable at this time, such Assignment as to the Note is severable from the assigned causes of action, claims, and rights to payment, which include the authority to substitute as party in interest in the Lawsuit, and otherwise to pursue and receive payment.  Further, to the extent allowed by law, Assignee's conversion rights, as well as any claims against Diamondhead, its officers and directors relating to the Note are hereby assigned to the full extent permitted by Delaware law.

DATED this 17 day of September, 2015.

_____
SAMUEL I. BURSTYN
General Partner
College Health and Investment, L.P.

_____
DDM Holdings, LLC

EFiled:  Mar 12 2015 12:24PM EDT
Transaction ID 56908607
Case No. N15C-01-119 WCC

THIS SECURITY AND THE SECURITIES ISSUABLE UPON CONVERSION OR EXERCISE HEREOF HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. THIS SECURITY AND THE SECURITIES ISSUABLE UPON CONVERSION OR EXERCISE HEREOF MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT WITH RESPECT HERETO OR THERETO UNDER SAID ACT OR AN OPINION OF COUNSEL REASONABLY SATISFACTORY TO DIAMONDHEAD CASINO CORPORATION THAT SUCH REGISTRATION IS NOT REQUIRED.

## DIAMONDHEAD CASINO CORPORATION

## PROMISSORY NOTE

**Principle Amount: $150,000.00**
**(6 UNITS PURCHASED)**

Issue Date: **MARCH 25, 2010**

FOR VALUE RECEIVED, Diamondhead Casino Corporation, a Delaware corporation, located at 1301 Seminole Boulevard, Suite 142, Largo, Florida 33770 (hereinafter called "the Company" or "the Borrower"), hereby promises to pay to **COLLEGE, HEALTH AND INVESTMENTS, LTD.** (the "Holder") located at 801 Brickell Avenue, P.H.-1, Miami, Florida, 33131, without demand, the principal amount of **One Hundred and Fifty Thousand Dollars ($150,000.00)**, plus all accrued and unpaid interest thereon, on the Maturity Date," as defined below, to the extent the principal has not previously been paid or converted into Common Stock of the Company as set forth below.

This Note is one of a duly authorized issue of twelve percent (12%) unsecured, convertible Promissory Notes of the Borrower, in aggregate maximum principal amount of up to Seven Hundred and Fifty Thousand Dollars ($750,000), (the "Promissory Notes") issued pursuant to a Subscription Agreement (the "Subscription Agreement"). The Promissory Notes rank equally and ratably without priority over one another. No payment, including any prepayment, shall be made hereunder unless payment, including any prepayment, is offered with respect to the other Promissory Notes, in an amount which bears the same ratio to the then unpaid principal amount of such Promissory Notes as the payment made hereon bears to the then unpaid principal amount under this Note. Unless otherwise separately defined herein, all capitalized terms used in this Note shall have the same meaning as is set forth in the Subscription Agreement. The following terms shall apply to this Note.

## ARTICLE I
## GENERAL PROVISIONS

1.1  Interest Rate.
Interest on the outstanding principal balance of this unsecured, convertible Promissory Note (hereafter "this Note") shall accrue, beginning from the Issue Date stated above, at a rate of twelve percent (12%) per annum. Interest on this Note shall be paid in cash or Common Stock of the Company at the sole

option of the Borrower. Interest shall be payable semi-annually and, if paid in Common Stock, computed based upon the average bid closing price of the Common Stock for the thirty consecutive business days prior to June 30 and December 31 of each year. Interest on the outstanding principal balance of the Note shall be computed on the basis of the actual number of days elapsed and a 365 day year.

1.2  Maturity Date.
The maturity date ("Maturity Date") of this Note shall be two years from the above-stated Issue Date of this Note.

1.3  Prepayment in Cash.
This Note shall not be subject to any prepayment in cash by the Borrower without the consent of the Holder.

**ARTICLE II**
**CONVERSION RIGHTS**

2.1.  Conversion into the Borrower's Common Stock.

Holder's Right to Convert
The Holder shall have the right to convert the unpaid principal due under this Note into Common Stock of the Borrower at any time.

The Holder shall exercise its right of conversion by forwarding the original of the Note, together with a Notice of Conversion, signed by the Holder, notifying the Borrower that the Holder is exercising its right to convert the unpaid principal due under the Note to Common Shares of the Borrower. For each Unit purchased for $25,000, the Note shall be convertible into a maximum of 50,000 shares of Common Stock of the Borrower. As soon as is practicable after receipt of the Notice of Conversion and subject to the receipt of the original Note (or if the original Note has been lost or destroyed, an affidavit of Holder certifying to such loss or destruction), the Company shall issue and deliver, or cause to be issued and delivered to the Holder, a certificate or certificates for the number of shares due the Holder. Any unpaid interest due on the Note shall, at the option of the Borrower, be payable in cash or in Common Stock of the Borrower. If paid in Common Stock, the number of shares of Common Stock payable in interest shall be computed by dividing the unpaid interest due by the average closing bid price of the Common Stock for the thirty (30) consecutive business days prior to the date of the Notice of Conversion.

In the event, the Borrower has made payment of a portion of the principal due under this Note, the number of shares due the Holder upon exercise of the right to convert shall be proportionally adjusted to an amount computed by multiplying the original number of shares available for conversion pursuant to this Note by a fraction, where the numerator is the remaining unpaid principal balance of the note and the denominator is $25,000 multiplied by the number of units purchased.

Borrower's Right to Convert
The Borrower shall have the right to convert the principal and any interest due under this Note into Common Stock of the Borrower as set forth below.



Upon written notice to the Holder, the Borrower may, after a minimum of one hundred and eighty (180) calendar days from the Issue Date or, alternatively, after the price of the Common Stock of the Borrower is at or above One Dollar ($1.00) per share for thirty (30) consecutive business days prior to the date of written notice to the Holder, convert the outstanding principal due under this Note into shares of fully-paid and nonassessable shares of Common Stock of the Borrower. For each Unit purchased for $25,000, the Note shall be convertible into a maximum of 50,000 shares of Common Stock of the Borrower. Any unpaid interest due on the Note shall, at the option of the Borrower, be payable in cash or in Common Stock of the Borrower. If paid in Common Stock, the number of shares of Common Stock payable in interest shall be computed by dividing the unpaid interest due by the average closing bid price of the Common Stock for the thirty (30) consecutive business days prior to the Conversion Date. The Holder agrees that it has no right to prevent the Borrower from effecting such conversion without the Holder's consent.

In the event, the Borrower has made payment of a portion of the principal due under this Note, the number of shares due the Holder upon exercise of the right to convert shall be proportionally adjusted to an amount computed by multiplying the original number of shares available for conversion pursuant to this Note by a fraction, where the numerator is the remaining unpaid principal balance of the note and the denominator is $25,000 multiplied by the number of units purchased.

## 2.2 Notice of Conversion.

The Borrower shall exercise its right of conversion by forwarding a Notice of Conversion, signed by the President of the Borrower, to the Holder, a) notifying the Holder that the Borrower is exercising its right to convert the Note to Common Shares of the Borrower and the effective date of conversion ("the Conversion Date"), which date shall be at least ten (10) calendar days from the date of the Notice of Conversion, but no later than thirty (30) calendar days from the date of the Notice of Conversion; and b) notifying the Holder of the amount of interest to be paid and whether the interest will be paid in cash or in Common Stock of the Borrower. The Holder agrees to surrender the original Note not later than seven (7) business days following receipt of the Notice of Conversion (or if the original Note has been lost or destroyed, to provide an affidavit certifying to such loss or destruction). As soon as is practicable after the Conversion Date and subject to the receipt of the original Note (or if the original Note has been lost or destroyed, an affidavit of Holder certifying to such loss or destruction), the Company shall issue and deliver, or cause to be issued and delivered to the Holder, a certificate or certificates for the number of shares due the Holder with interest computed as of the Conversion Date.

## 2.3 Fractional Shares.
No fractional shares shall be issued. The number of shares due the Holder will be rounded up or down to the nearest share.

## ARTICLE III
## EVENT OF DEFAULT

### 3.1    Event of Default.
The occurrence of any of the following events of default ("Event of Default") shall, at the option of the Holder hereof, make all sums of principal and interest then remaining unpaid hereon and all other amounts payable hereunder immediately due and payable, upon demand, without presentment, or grace period, all of which hereby are expressly waived, except as set forth below:



(a) *Failure to Pay Principal or Interest.* The Borrower fails to pay principal, interest or other sum due under this Note when due and such failure continues for a period of sixty (60) business days after the due date.

(b) *Breach of Covenant.* The Borrower breaches any material covenant or other term or condition of the Subscription Agreement or this Note in any material respect and such breach, if capable of cure, continues for a period of sixty (60) business days after written notice to the Borrower from the Holder.

(c) *Breach of Representations and Warranties.* Any material representation or warranty of the Borrower made herein, in the Subscription Agreement, or in any agreement, statement or certificate given in writing pursuant hereto or in connection herewith shall be false or misleading in any material respect as of the date made and the Closing Date, and would otherwise have a material adverse effect on the Borrower.

(d) *Receiver or Trustee.* The Borrower shall make an assignment for the benefit of creditors, or apply for or consent to the appointment of a receiver or trustee for it or for a substantial part of its property or business; or such a receiver or trustee shall otherwise be appointed.

(e) *Judgments.* Any money judgment, writ or similar final process shall be entered or filed against Borrower or any of its property or other assets for more than $1,500,000, and shall remain unvacated, unbonded or unstayed for a period of ninety (90) business days.

(f) *Bankruptcy.* Bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings or relief under any bankruptcy law or any law, or the issuance of any notice in relation to such event, for the relief of debtors shall be instituted by or against the Borrower and if instituted against Borrower are not dismissed within ninety (90) business days of initiation.

3.2  Remedies Upon An Event of Default.

If an Event of Default shall have occurred and shall be continuing, the Holder of this Note may at any time at its option, (a) declare the entire unpaid principal balance of this Note, together with all interest accrued hereon, due and payable, and thereupon, the same shall be accelerated and so due and payable; provided, however, that upon the occurrence of an Event of Default described in (i) Sections 3.1(f), without presentment, demand, protest, or notice, all of which are hereby expressly unconditionally and irrevocably waived by the Borrower, the outstanding principal balance and accrued interest hereunder shall be automatically due and payable, and (ii) Sections 3.1(a) through (e), the Holder may exercise or otherwise enforce any one or more of the Holder's rights, powers, privileges, remedies and interests under this Note or applicable law. No course of delay on the part of the Holder shall operate as a waiver thereof or otherwise prejudice the right of the Holder. No remedy conferred hereby shall be exclusive of any other remedy referred to herein or now or hereafter available at law, in equity, by statute or otherwise.



## ARTICLE IV
## MISCELLANEOUS

### 4.1   Failure or Indulgence Not Waiver.

No failure or delay on the part of Holder hereof in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other right, power or privilege. All rights and remedies existing hereunder are cumulative to, and not exclusive of, any rights or remedies otherwise available.

### 4.2   Notices.

All notices, demands, requests, consents, approvals, and other communications required or permitted hereunder shall be in writing and, unless otherwise specified herein, shall be (i) personally served, (ii) deposited in the mail by registered or certified mail, return receipt requested, postage prepaid, (iii) delivered by reputable air courier service with charges prepaid, or (iv) transmitted by hand delivery or facsimile. Any notice or other communication required or permitted to be given hereunder shall be deemed effective (a) upon hand delivery or delivery by facsimile, with accurate confirmation generated by the transmitting facsimile machine, at the address or number designated (if delivered on a business day during normal business hours where such notice is to be received), or the first business day following such delivery (if delivered other than on a business day during normal business hours where such notice is to be received) or (b) on the second business day following the date of mailing by express courier service, fully prepaid, addressed to such address, or upon actual receipt of such mailing, whichever shall first occur. The addresses for such communication shall be the addresses set forth in the Subscription Agreement or such other address as such party shall have specified most recently by written notice.

### 4.3   Assignability.

This Note shall be binding upon the Borrower and its successors and assigns and shall inure to the benefit of the Holder and its successors in interest. This Note may not be assigned by the Holder without the prior written consent of the Company, except to an Affiliate of Holder that is an "accredited investor" as such term is defined in Regulation D under the Securities Act of 1933.

### 4.4   Remedies, Characterizations, Other Obligations, Breaches and Injunctive Relief.

The remedies provided in this Note shall be cumulative and in addition to all other remedies available under this Note, at law or in equity (including, without limitation, a decree of specific performance and/or other injunctive relief). No remedy contained herein shall be deemed a waiver of compliance with the provisions giving rise to such remedy and nothing herein shall limit a Holder's right to pursue actual damages for any failure by the Borrower to comply with the terms of this Note. Amounts set forth or provided for herein with respect to payments and the like (and the computation thereof) shall be the amounts to be received by the Holder. The Borrower acknowledges that a breach by it of its obligations hereunder will cause irreparable and material harm to the Holder and that the remedy at law for any such breach may be inadequate. Therefore the Borrower agrees that, in the event of any such breach or threatened breach, the Holder shall be entitled, in addition to all other available rights and remedies, at law or in equity, to such equitable relief, including but not limited to an injunction restraining any such breach or threatened breach, without the necessity of showing economic loss and without any bond or other security being required.



4.5    **WAIVER OF TRIAL BY JURY.**

THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHTS THEY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS NOTE OR ANY OTHER DOCUMENT OR INSTRUMENT EXECUTED AND DELIEVERED IN CONNECTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN), OR ACTIONS OF THE PAYEE OR THE COMPANY. THIS PROVISION IS A MATERIAL INDUCEMNT FOR THE PAYEE'S PURCHASING THIS NOTE.

4.6    Payment Not Subject to Set-Off.

The Borrower acknowledges that it has not and will not be permitted to assert any right of set-off or counterclaim with respect to its obligation to pay the principal and interest as of the Maturity Date as set forth herein and hereby waives any and all defenses it may have in the future with respect to such payment, except to the extent that (a) this Note has been converted into Common Stock in accordance with Article II prior to the Maturity Date, (b) the Borrower's defense is that Borrower has paid part or all of the principal and interest due hereon in accordance with the terms hereof or (c) the Holder has expressly waived its right to such payment in a writing signed by Holder.

4.7    Governing Law and Jurisdiction.

The parties expressly agree that all the terms and provisions hereof shall be construed in accordance with and governed by the laws of the State of Delaware. The parties hereby agree that any dispute which may arise between them arising out of or in connection with this Agreement shall be adjudicated before a court of competent jurisdiction in the State of Delaware and they hereby submit to the exclusive jurisdiction of the courts of the State of Delaware with respect to any action or legal proceeding commenced by any party and irrevocably waive any objection they now or hereafter may have respecting the venue of any such action or proceeding brought in such a court or respecting the fact that such court is an inconvenient forum.

4.8    Construction.

This Agreement shall not be construed against the party preparing it, but shall be construed as if all parties prepared it.

4.9    Maximum Payments.

Nothing contained herein shall be deemed to establish or require the payment of a rate of interest or other charges in excess of the maximum permitted by applicable law. In the event that the rate of interest required to be paid or other charges hereunder exceed the maximum permitted by such law, any payments in excess of such maximum shall be credited against amounts owed by the Borrower to the Holder and thus refunded to the Borrower.

5.0    Shareholder Status.

The Holder shall not have any rights as a shareholder of the Borrower with respect to shares underlying unconverted portions of this Note. However, the Holder will have all rights of a shareholder of the Borrower with respect to Common Stock, if any, issued upon conversion of this Note and with respect to Common Stock, if any, issued in payment of interest due on this Note.

5.1 <u>Incorporation by Reference.</u>
The Private Placement Memorandum of Diamondhead Casino Corporation dated March 1, 2010, the Accredited Investor Questionnaire, the Subscription Agreement, and the Warrant to Purchase Common Stock of Diamondhead Casino Corporation are incorporated herein by reference, together with all exhibits and appendices thereto and documents incorporated by reference therein.

**IN WITNESS WHEREOF,** the Borrower has caused this Note to be signed in its name by an authorized officer as of the **25th** day of **March,** 2010

**DIAMONDHEAD CASINO CORPORATION**
By:  Deborah A. Vitale
Title:  President

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| COLLEGE HEALTH & INVESTMENT, L.P., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. N15C-01-119 WCC |
| DIAMONDHEAD CASINO CORPORATION, a Delaware Corporation | ) ) ) ) | |
| Defendant. | ) | |

Submitted: March 12, 2015
Decided: July 2, 2015

**Defendant's Motion to Dismiss – DENIED**

**MEMORANDUM OPINION**

Joseph B. Cicero, Esquire, Stephanie S. Habelow, Esquire, Chipman Brown Cicero & Cole, LLP, The Nemours Building, 1007 North Orange Street, Suite 1110, Wilmington, DE 19801.  Attorneys for Plaintiff.

David L. Finger, Esquire, Finger & Slanina, LLC, One Commerce Center, 1201 N. Orange Street, 7th Floor, Wilmington, DE 19801.  Attorney for Defendant.

**CARPENTER, J.**

Before this Court is Defendant's Motion to Dismiss the instant Complaint for mootness. For the foregoing reasons, the Court finds that the issue is not moot and Defendant's Motion to Dismiss is hereby **DENIED**.

## FACTS

On March 1, 2010, Diamondhead Casino Corporation ("Defendant" or "Diamondhead") sent a Private Placement Memorandum ("PPM") to institutional investors soliciting an investment in convertible Promissory Notes. On March 25, 2010, College Health & Investment, L.P. ("Plaintiff" or "CHI") invested $150,000.00 with Defendant and received an executed Promissory Note (the "Note") in return. Pursuant to the terms of the Note, Defendant was required to pay $150,000 to Plaintiff by March 25, 2012 (the "Maturity Date") plus interest owed. Interest accrued at a rate of twelve percent (12%) annually. Defendant failed to repay the Note on the Maturity Date, and has made no payments since.

The Note defines an "Event of Default" as a failure to pay the principal balance or interest when the Note is due and when such failure continues for sixty (60) days after the Maturity Date. The Note also provides for remedies upon the occurrence of a default. Particularly, the Note provides that Plaintiff "may at any time at its option, (a) declare the entire unpaid principal balance of this Note,

2

together with all interest accrued hereon, due and payable, and thereupon, the same shall be accelerated and so due and payable."[1]

Plaintiff provided written notice to Defendant on September 22, 2014, demanding payment of the principal amount of the Note and interest from June 30, 2012 at twelve percent annually. On October 14, 2014, Defendant responded asserting that it did not have the funds to pay the Note. On January 15, 2015 the Plaintiff filed this action. Seven days later, on January 22, 2015, Defendant notified Plaintiff in writing that it would exercise the "Borrower's Right to Convert" pursuant to Section 2.1 of the Note, and convert the unpaid principal and interest to common stock. Section 2.1 of the Note provides Defendant the right to convert principal and interest due under the Note into Common Stock of the Defendant, "upon written notice to the [Plaintiff]…after a minimum of one hundred and eighty (180) calendar days from the Issue Date or, alternatively, after the price of the Common Stock of the [Defendant] is at or above One Dollar ($1.00) per share for thirty (30) consecutive business days prior to the date of written notice…."[2]

On February 11, 2015, Defendant moved to dismiss the Complaint asserting that they had tendered the relief requested by Plaintiff. Plaintiff contends that

---

[1] Note at §3.2.
[2] Note at §2.1.

Defendant's attempted conversion of the Note into common stock is invalid and does not warrant dismissal of the Complaint.  The Court heard oral argument and this decision follows.

## STANDARD OF REVIEW

The doctrine of mootness requires a court to dismiss a claim "if the substance of the dispute disappears due to the occurrence of certain events following the filing of an action."[3]  However, if the "alleged injury still exists despite the occurrence of intervening events, a justiciable controversy remains, and the mootness doctrine will not operate to deprive the court of jurisdiction to hear the case."[4]  "Because the requirement of an actual controversy goes directly to the court's subject matter jurisdiction over an action, a motion to dismiss based on justiciability grounds is properly viewed in the context of [Superior Court] Rule 12(b)(1), and the court may consider documents and materials extrinsic to the complaint."[5]

## DISCUSSION

This is the case of a casino receiving $150,000, executing a note for that amount, paying nothing on the principal, defaulting and then asserting that they

---

[3] *Multi–Fineline Electronix, Inc. v. WBL Corp. Ltd.*, 2007 WL 431050, at *8 (Del.Ch. Feb. 2, 2007).
[4] *NAMA Holdings, LLC v. Related World Mkt. Ctr., LLC*, 922 A.2d 417, 435 (Del. Ch. 2007) (citing *Energy Partners, Ltd. v. Stone Energy Corp.*, 2006 WL 2947483, at *6 (Del.Ch. Oct. 11, 2006)).
[5] *NAMA Holdings*, 922 A.2d at 435 n. 43 (Del. Ch. 2007).

have complied with the terms of the note by converting it to their common stock

that has little or no value. If the Court was to find their argument had merit it

would truly be declaring that they had hit the "Jackpot". Unfortunately for them,

the Court will not play with their dice and finds the defendant's position is not

supported by any reasonable reading of the terms of the note and their Motion will

be denied.

First of all, there is no question that the Defendant has defaulted on the note.

The maturity date of the note was March 25, 2012 and there have been no

payments in satisfaction of the note. Section 3.1 of the promissory note states:

> The occurrence of any of the following events of default ("Event
> of Default") shall at the option of the Holder hereof, make all
> sums of principal and interest then remaining unpaid hereon and
> all other amounts payable hereunder immediately due and
> payable, upon demand, without presentment, or grace period, all
> of which hereby are expressly waived, except as set forth below:
>
> (a) *Failure to Pay Principal or Interest.* The Borrower fails to pay
> principal, interest, or other sum due under this Note when due and
> such failure continues for a period of sixty (60) business days
> after the due date.[6]

Since it has been more than three years since the note was due, the requirements of

3.1(a) have been met. The remedies upon default are set forth in Section 3.2 of the

note and allow the holder of the note, Plaintiff in this case, to "declare the entire

unpaid principal balance of this Note, together with all interest accrued hereon,

---

[6] Note at §3.1.

due and payable, and thereupon, the same shall be accelerated and so due and payable."[7] Here the Plaintiff notified the Defendant on September 14, 2014 that they were exercising the option of declaring the unpaid balance and interest immediately payable. When the Defendant failed to satisfy the note, the Plaintiff filed this action on January 15, 2015. Therefore there is no question that the Defendant is in default and the Plaintiff has appropriately exercised its options under the Note.

The Defendant argues that in spite of the default, they have the right to convert the amount of the loan to its common stock under Section 2.1 of the Note. On January 22, 2015, the Defendant sent Plaintiff a letter indicating they were converting the debt to common stock and it appears Defendant converted the principal into 300,000 shares. While the calculation as to interest is unclear to the Court, it also appears for the time period of June 2010 to the end of 2014 the unpaid interest was also converted into shares of stock. While the Court acknowledges the conversion right of the Defendant under the note, it finds that the right ceased when the maturity date of note passed and the Plaintiff exercised its default rights.

---

[7] Note at §3.2.

6

Section 4.6 of the note limited the Defendant's conversion right to a time period before the note matured. The provision in part states:

> The Borrower acknowledges that it has not and will not be permitted to assert any right of set-off or counterclaim with respect to its obligation to pay the principal and interest as of the Maturity Date as set forth herein and hereby waives any and all defenses it may have in the future with respect to such payment, except to the extent that (a) this Note has been converted into Common Stock in accordance with Article II *prior to the Maturity Date*...[8]

This provision would allow a set off of the common stock value but only if the conversion occurred before maturity. The intent of the parties also can be found in Diamondhead's Private Placement Memorandum of March of 2010 which was incorporated by reference into the note. The document reflects that "[to] the extent not previously paid, the principal due under the Note shall be payable in full on the Maturity Date, unless *previously converted* into the Borrower's Common Stock or accelerated due to the occurrence of an Event of Default." Taken together, the clear common sense reading of the documents reflect that the conversion right ends either at the date of maturity or upon the default of the note. Since both have occurred here, the Court finds the Defendant cannot satisfy the debt by its conversion to common stock and the matter is not moot. As such the Motion to Dismiss will be denied.

---

[8] Note at §4.6 (emphasis added).

It is also well settled in contract law that a "party who first commits a material breach of a contract cannot enforce the contract going forward."[9] Here, the essential purpose of the contract was to loan Defendant money for two years with a twelve percent annual interest rate. Plaintiff expected repayment of the principal amount, $150,000 by March 25, 2012, plus interest owed. Defendant did not repay the Note on that Date, and failed to pay interest after June 30, 2012. By failing to perform its obligations under the contract, Defendant defaulted on the Note and defeated the essential purpose of the contract. Therefore, Defendant has materially breached the Note, and cannot now ask the Court to enforce Section 2.1 of the Note against the Plaintiff. For these reasons, Defendant does not have the right to convert the remaining principal and interest into Common Stock, and cannot now assert that its obligations have been satisfied.

### CONCLUSION

Based on the above reasoning, Defendant's Motion to Dismiss is hereby **DENIED**.

**IT IS SO ORDERED.**

/s/ William C. Carpenter, Jr.
Judge William C. Carpenter, Jr.

---

[9] *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *21 (Del. Ch. July 24, 2013) (citing *BioLife Solutions, Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch.2003)).